**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICHOLAS KILLEEN,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>NIC INC., ART N. BURTSCHER, SYLVESTER JAMES, PETE WILSON, HARRY HERINGTON, ALEXANDER C. KEMPER, VENMAL ARASU, C. BRAD HENRY, TONY E. SCOTT, JAYAPRAKASH VIJAYAN, and WILLIAM M. LYONS,<br><br>　　　Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

　　Plaintiff Nicholas Killeen ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

　　1.　　This is an action against NIC Inc. ("NIC" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and

1

78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of NIC by Tyler Technologies, Inc. ("Tyler") and Topos Acquisition, Inc., a wholly-owned subsidiary of Tyler.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of NIC common stock.

7. Defendant NIC, together with its subsidiaries, provides digital government services and payment solutions that enable governments to use technology to provide various services to businesses and citizens in the United States. The Company is incorporated in

Delaware. The Company's New Jersey Division is located in Trenton, N.J.[1] The Company's common stock trades on the Nasdaq under the ticker symbol, "EGOV."

8. Defendant Art N. Burtscher ("Burtscher") is a director of the Company.

9. Defendant Sylvester James ("James") is a director of the Company.

10. Defendant Pete Wilson ("Wilson") is a director of the Company.

11. Defendant Harry Herington ("Herington") is Chief Executive Officer and Chairman of the Board of the Company.

12. Defendant Venmal Arasu ("Arasu") is a director of the Company.

13. Defendant Alexander C. Kemper ("Kemper") is a director of the Company.

14. Defendant C. Brad Henry ("Henry") is a director of the Company.

15. Defendant Tony E. Scott ("Scott") is a director of the Company.

16. Defendant Jayaprakash Vijayan ("Vijayan") is a director of the Company.

17. Defendant William M. Lyons ("Lyons") is a director of the Company.

18. Defendants Burtscher, James, Wilson, Herington, Arasu, Kemper, Henry, Scott, Vijayan, and Lyons are collectively referred to herein as the "Individual Defendants."

19. Defendants NIC and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. On February 10, 2021, NIC and Tyler announced that they had entered into a definitive agreement under which Tyler would acquire all outstanding shares of NIC in an all-cash

---

[1] *See* NIC Inc., https://www.egov.com/who-we-serve/partners/new-jersey.html (last visited Apr. 4, 2021).

transaction. Under the terms of the transaction, NIC shareholders would receive $34.00 per share in cash. The press release announcing the transaction states, in pertinent part:

**Tyler Technologies to Acquire NIC in $2.3 Billion All-Cash Transaction**

*Transaction further strengthens Tyler's ability to provide end-to-end solutions to local, state, and federal governments*

*Expected to be accretive to Tyler's non-GAAP earnings and EBITDA in 2021*

February 10, 2021 06:45 AM Eastern Standard Time

PLANO, Texas & OLATHE, Kan.--(BUSINESS WIRE)--Tyler Technologies, Inc. (NYSE: TYL) and NIC Inc. (NASDAQ: EGOV), jointly announced today that they have entered into a definitive agreement under which Tyler will acquire all outstanding shares of NIC in an all-cash transaction valued at approximately $2.3 billion.

Under the terms of the transaction, which was unanimously approved by the boards of directors of both companies, NIC stockholders will receive $34.00 per share in cash, which represents a premium of approximately 22% to NIC's 30-day volume weighted average price as of February 9, 2021, and a 14% premium to the closing share price and 52-week closing high of $29.81 on February 9, 2021.

NIC is a leading digital government solutions and payments company, serving more than 7,100 federal, state, and local government agencies across the nation. Headquartered in Olathe, Kansas, NIC delivers user-friendly digital services that make it easier and more efficient for citizens and businesses to interact with government – providing valuable conveniences like applying for unemployment insurance, submitting business filings, renewing licenses, accessing information, and making secure payments without visiting a government office. Leveraging its strong track record of innovation, NIC helps government agencies rapidly deliver new digital solutions to provide essential services to citizens and businesses alike. In fiscal year 2020, NIC delivered revenues of $460.5 million and net income of $68.6 million.

"The pandemic has accelerated the shift by governments to online services and electronic payments as more citizens and businesses are interacting digitally with government. NIC is uniquely positioned with its deep expertise and robust digital solutions to partner with us in making government more efficient and more accessible to citizens," said Lynn Moore, Tyler's president and chief executive officer. "Our companies share a vision for thriving, connected communities, and our cultures are extremely compatible. The combination will provide extensive benefits for the clients, employees, and shareholders of both companies."

\* \* \*

**Financing, Approvals and Timing**

Tyler plans to fund the transaction with a combination of approximately $700 million of cash on Tyler's balance sheet and new debt. Tyler has obtained financing commitments for a $1.6 billion bridge facility with Goldman Sachs Bank USA and expects to replace the bridge facility with permanent financing prior to closing. The combination is expected to be accretive to Tyler's non-GAAP earnings and EBITDA, as well as recurring revenue mix and free cash flow per share, in 2021.

The transaction is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by NIC's stockholders. The transaction is expected to close in the second quarter of 2021.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Tyler, and Munck Wilson Mandala LLP is serving as legal counsel. Cowen and Company LLC is serving as exclusive financial advisor to NIC, and Shearman & Sterling LLP is serving as legal counsel.

\* \* \*

**About Tyler Technologies, Inc.**

Tyler Technologies (NYSE: TYL) provides integrated software and technology services to the public sector. Tyler's end-to-end solutions empower local, state, and federal government entities to operate more efficiently and connect more transparently with their constituents and with each other. By connecting data and processes across disparate systems, Tyler's solutions are transforming how clients gain actionable insights that solve problems in their communities. Tyler has more than 27,000 successful installations across more than 11,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler has been named to Government Technology's GovTech 100 list five times and has been recognized three times on Forbes' "Most Innovative Growth Companies" list. More information about Tyler Technologies, an S&P 500 company headquartered in Plano, Texas, can be found at tylertech.com.

**About NIC Inc.**

NIC (Nasdaq: EGOV) is a leading digital government solutions and payments company, serving more than 7,100 federal, state and local government agencies across the nation. With headquarters in Olathe, Kansas, and offices in more than 30 states, NIC partners with government to deliver user-friendly digital services that make it easier and more efficient to interact with government – providing valuable

conveniences such as applying for unemployment insurance, submitting business filings, renewing licenses, accessing information and making secure payments without visiting a government office. In 2020, NIC securely processed 400 million online transactions and more than $24 billion on behalf of government agencies. In response to the COVID-19 pandemic, NIC also developed more than 130 new solutions to address the needs of government and those it serves, such as crisis communications, pandemic unemployment, COVID-19 testing, and vaccine scheduling. Learn more at www.egov.com.

21. On March 17, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

22. The Proxy Statement, which recommends that NIC shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) NIC's financial projections; (ii) the financial analyses performed by NIC's financial advisor, Cowen and Company, LLC ("Cowen"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Cowen; and (iv) the sales process leading up to the Proposed Transaction.

23. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the NIC Board of Directors and Reasons for the Merger; (iii) Opinion of Financial Advisor; and (iv) Projected Financial Information.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the April 19, 2021 shareholder vote on the Proposed Transaction, NIC shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning NIC's Financial Projections**

25. The Proxy Statement omits material information concerning NIC's financial projections.

26. The Proxy Statement provides that, "in connection with the evaluation of the proposed merger, NIC's senior management shared certain non-public, unaudited prospective financial information prepared by it for strategic planning purposes with the NIC board of directors and with Cowen, for purposes of its financial analyses and opinion, for the fiscal year ending December 31, 2020 and the five following fiscal years ending December 31, 2025" (the "Projections").

27. The Proxy Statement provides a purported table of the Projections.

28. With respect to the Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, and (iii) EBIT; (2) NIC's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

30. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Cowen's Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Cowen.

33. With respect to Cowen's "*Selected Public Companies Analysis*" and "*Selected M&A Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Cowen observed in its analyses.

34. The Proxy Statement fails to disclose the following concerning Cowen's "*Discounted Cash Flow Analysis*": (1) NIC's terminal values; (2) the individual inputs and

---

speech.html (footnotes omitted) (last visited Apr. 1, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

assumptions underlying the (i) range of perpetuity growth rates of 2.5% to 3.5%, and (ii) discount rates ranging from 8.0% to 9.0%; (3) NIC's total debt and added cash and cash equivalents, each as of December 31, 2020; and (4) the number of NIC's fully diluted shares outstanding.

35. The Proxy Statement fails to disclose the following concerning Cowen's "*Illustrative Present Value of Future Stock Price Analysis*": (1) the Company's total debt and cash and cash equivalents, each as estimated for the end of calendar years 2021, 2022 and 2023, respectively; (2) the number of NIC's fully diluted shares estimated to be outstanding at the end of calendar years 2021, 2022 and 2023, respectively; and (3) the individual inputs and assumptions underlying the discount rate of 8.6%.

36. With respect to Cowen's "*Illustrative Precedent Premiums Paid Analysis*," the Proxy Statement fails to disclose: (1) the individual multiples and financial metrics of the transactions Cowen observed in its analyses; and (2) the individual premiums paid therein.

37. With respect to Cowen's "*Research Analyst Price Targets*," the Proxy Statement fails to disclose: (1) the individual price targets observed by Cowen in its analyses; and (2) the sources thereof.

38. The valuation methods, underlying assumptions, and key inputs used by Cowen in rendering its purported fairness opinion must be fairly disclosed to NIC shareholders. The description of Cowen's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, NIC shareholders are unable to fully understand Cowen's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Cowen

39. The Proxy Statement omits material information concerning potential conflicts of interest involving Cowen.

40. The Proxy Statement fails to disclose the specific nature of the "services unrelated to the merger" that Cowen provided to NIC during the two-year period prior to the date of Cowen's fairness opinion, including the amount of compensation Cowen received for providing each service.

41. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

43. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44. The Proxy Statement provides that, during the sales process leading up to the Proposed Transaction, NIC was engaged in discussions with potential strategic buyers concerning a potential transaction with NIC, including with Company A, Company B, Company C, and Company D.

45. The Proxy Statement, however, fails to disclose whether NIC executed non-disclosure or confidentiality agreements with any counterparties during the sales process, and if

so, the terms thereof, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

46. Without this information, NIC shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable NIC shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use

11

of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

51. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.   Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.   Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 1, 2021                                         Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*